UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WISCONSIN

In re:  Case No.: 17-12476-7

NEIL RONALD HOFFMAN,

Debtor.

MARK CAMA and STEALTH TREE STANDS, INC.,

Plaintiffs,

v.  Adversary No.: 17-92

NEIL RONALD HOFFMAN,

Defendant.

## DECISION

Neil Hoffman ("Debtor" or "Defendant") filed a chapter 7 petition. Plaintiffs Mark Cama and Stealth Tree Stands, Inc., filed this adversary proceeding seeking a determination of nondischargeability under sections 523(a)(2)(a), (a)(4), and (a)(6), and a denial of discharge under section 727. Defendant filed a Motion to Dismiss on all the counts. A trial is scheduled in this adversary on October 25, 2018.

## STATEMENT OF FACTS

Defendant is the owner of Woods and Water, Inc., now known as NRH Industries, Inc. ("Woods"). Plaintiff Mark Cama is the owner of Stealth Tree Stands, Inc. ("Stealth"). On January 25, 2013, Woods executed a Purchase Agreement with Stealth for the sale of Woods' assets and 250 new tree stands.

Woods also agreed to discontinue the use of the name Woods and Water and conduct business as NRH Industries. The Purchase Agreement contemplated the tree stands would be manufactured after the execution of the contract and then delivered to Stealth "at the place of manufacture" by July 1, 2013. Stealth was responsible for any cost of shipping the goods to its own place of business. Debtor individually guaranteed the Purchase Agreement.

The parties have stipulated that the purchased assets are still in Defendant's possession. It also appears Woods dissolved by the end of 2015.

Plaintiffs allege Defendant breached the Purchase Agreement. Plaintiffs also allege Defendant misrepresented Woods' tree stand business revenue, its ownership of dies, and its ability to perform under the Purchase Agreement. Plaintiffs state those representations were false. Plaintiffs also allege Defendant was paid in advance for labor and materials. Finally, Plaintiffs assert Defendant failed to account for a loss of assets in state court litigation between the parties in 2015—in particular, the disposition of the 2013 sale proceeds.

## DISCUSSION

1. *Fed. R. Civ. P. 12(c) Standard*

Defendant has moved to dismiss this case with prejudice under Fed. R. Civ. P. 12(c). Rule 12(b)(6) and Rule 12(c) "employ the same standard: the complaint must state a claim that is plausible on its face." *Vinson v. Vermilion Cty., Ill.,* 776 F.3d 924, 928 (7th Cir. 2015). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). *See also St. John v. Cach, LLC*, 822 F.3d 388, 389 (7th Cir. 2016).

A motion to dismiss under Rule 12(c) requires a two-prong analysis. First, while a complaint may include legal conclusions, "they must be supported by factual allegations." *Iqbal,* 556 U.S. at 679. In considering factual allegations, a court must "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* Second, if a complaint contains supporting factual allegations, it must also state a plausible claim. *Id.*

   2. <u>Nondischargeability Under 11 U.S.C. § 523(a)(2)(A)</u>

Under 11 U.S.C. § 523(a)(2)(A), a discharge in bankruptcy does not exempt a debtor from debt arising from false pretenses, a false representation, or actual fraud. A finding of nondischargeability for false pretenses or false representation requires that the creditor establish the debtor made a knowingly "false representation of fact . . . with an intent to deceive" and "upon which the creditor justifiably relied." *Zamora v. Jacobs (In re Jacobs)*, 448 B.R. 453, 471 (Bankr. N.D. Ill. 2011). A false representation in this context includes spoken and written statements, in addition to "conduct intended to create and foster a false impression." *Id.*

Scienter is a required element of any cause of action under section 523(a)(2)(A). *Id.* For purposes of false pretenses or actual fraud, "intent to deceive is measured by the debtor's subjective intention at the time the representation was made." *Id.* at 472. Thus, to survive Defendant's Motion to Dismiss, the Plaintiffs must allege some facts that could plausibly constitute a

3

section 523(a)(2)(A) claim, including whether Defendant possessed the requisite intent under that section.

Plaintiffs' Complaint meets the burden to survive a motion to dismiss on this claim. The Complaint alleges Defendant made statements that Plaintiffs believe to be untrue. Plaintiffs allege Defendant falsely represented that (i) Woods generated at least $20,000 annually from tree stands, (ii) Woods owned some dies, and (iii) Woods was capable of performing under the agreement. For the sake of completeness, Plaintiffs also alleged Defendant knew the representations were false and that Plaintiffs relied on those representations.

The Court must take the factual allegations in the Complaint as true. Taken together, they support a claim under section 523(a)(2)(A). The motion to dismiss the section 523(a)(2) claim is denied.

   3. *Nondischargeability Under 11 U.S.C. § 523(a)(4)*

Section 523(a)(4) excludes from discharge a debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." Plaintiffs do not allege embezzlement or larceny. Instead, the claims are only for fraud or defalcation in a fiduciary capacity. The scope of the term "fiduciary" is a narrowly-defined question of federal law, "meaning that the applicable nonbankruptcy law that creates a fiduciary relationship must clearly outline the fiduciary duties and identify the trust property." 4 *Collier on Bankruptcy* ¶ 523.10[1][d] (16th ed.). Typically, the court "must examine the writing'" in ascertaining whether a fiduciary relationship exists. *Id.* Where there is no written agreement evidencing a fiduciary relationship, "a technical trust

4

relationship may be created by state statute or common law doctrines that impose trust-like obligations on a party sufficient to render the debtor a fiduciary within the meaning of section 523(a)(4)." *Id.*

As a first step under section 523(a)(4), Plaintiffs must show a fiduciary relationship between them and the Defendant. Plaintiffs allege a fiduciary relationship existed between the parties because of "Defendant's retention of the equipment and acceptance of money pursuant to a contract." ECF No. 15-1, p. 5. Plaintiffs cite *In re Marchiando*, which they insist stands for the principle that a fiduciary relationship arises where there is a "difference in knowledge or power between fiduciary and principal which . . . gives the former a position of ascendancy over the latter." 13 F.3d 1111, 1116 (1994).

Plaintiffs' allegation that a fiduciary relationship existed between the parties is a legal conclusion and the Court does not take it as true without some supporting factual allegations. Based on Plaintiffs' brief and the Complaint, the supporting factual allegations are apparently the contents of the Purchase Agreement and the asymmetry in "knowledge or power."

Plaintiffs rely on *In re Marchiando* for the principle that the difference in knowledge between the parties created a trust. 13 F.3d 1111 (1994). But Plaintiffs' reliance on *Marchiando* is misguided. In *Marchiando*, the Seventh Circuit considered whether a fiduciary relationship existed between a debtor and the Illinois Department of the Lottery. The debtor ran a general store and failed to remit proceeds of lottery ticket sales to the state, therefore creating a debt. Significantly, Illinois law provided the proceeds of sale of lottery tickets

5

"constitute[d] a trust fund until paid to the Department." *Id.* at 1113. The *Marchiando* court denied the existence of a fiduciary relationship, reasoning the mere presence of the word "trust" in the statute does not itself create a fiduciary relationship.

Relevant here, the Seventh Circuit observed in *Marchiando* that a fiduciary is typically a lawyer or guardian "in whom confidence. . . is entrusted with another person's money for safekeeping." *Id.* at 1116. "All the cases . . . that have held debts nondischargeable by virtue of section 523(a)(4) have involved either express trusts of a conventional variety or fiduciary relations of the kind just described—relations of inequality that justify the imposition on the fiduciary of a special duty, basically to treat his principal's affairs with all the solicitude that he would accord to his own affairs." *Id.*

The Purchase Agreement created no fiduciary relationship. It stipulated Stealth would pay Defendant for the labor to complete the work on the tree stands. It also outlined the terms of payment for the physical assets. It is clear the Purchase Agreement contemplated a sale of goods and services. If any money was transmitted, it was sent in satisfaction of the terms of the sale, not for safekeeping.

Plaintiffs cite no law that would explicitly or implicitly create a trust relationship between themselves and Defendant. There is nothing in the Purchase Agreement that can be read to create a trust relationship. The Plaintiffs argue the alleged asymmetry of knowledge created the fiduciary

6

relationship and "in the light most favorable to Plaintiffs, therefore, Defendant was Plaintiffs' fiduciary." ECF No. 15-1, p. 6.

First, under *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986), the Court must view all *facts* and *inferences* in the light most favorable to Plaintiffs, not create new law or standards favorable to Plaintiffs. To impose a trust relationship just because of an imbalance in knowledge would expand the holding in *Marchiando* well beyond its original parameters.

Second, Plaintiffs' interpretation of *Marchiando* raises the question of what purchase agreement *wouldn't* create a fiduciary relationship. In virtually any transaction to sell, the seller necessarily has more knowledge of the item being sold because the seller has possession of it. If this Court holds in favor of Plaintiffs' theory, then nearly every purchase agreement would impose the mantle of "fiduciary" on the seller and with it a more complex set of responsibilities and obligations. If the parties intended for the payment to be a trust, then they could have specified that in the Purchase Agreement. As written, the Purchase Agreement created no fiduciary relationship. Thus, the Court cannot find Defendant committed defalcation under section 523(a)(4).

The existence of a fiduciary relationship is an essential element of a claim under section 523(a)(4). Plaintiffs have articulated no legitimate basis for a fiduciary relationship and for that reason the motion to dismiss the section 523(a)(4) claim is granted.

### 4. *Nondischargeability Under 11 U.S.C. § 523(a)(6)*

Section 523(a)(6) provides a debt is nondischargeable if it was incurred through willful and malicious injury by the debtor. To show willful and malicious injury, Plaintiffs must show: (i) Defendant acted willfully, (ii) Defendant acted maliciously, and (iii) Defendant's willful and malicious actions caused injury to the Plaintiffs' property. *Owens v. Powell (In re Powell)*, 567 B.R. 429, 434 (Bankr. N.D.N.Y. 2017). To meet the standard for willfulness, the Plaintiffs must show "a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998) (emphasis in original).

"Actual malice" means "[t]he deliberate intent to commit an injury, as evidenced by external circumstances." *Black's Law Dictionary* 1101 (10th ed. 2014). Maliciousness in the context of section 523 generally encompasses "implied or constructive malice as well as actual malice." *In re McGuffey*, 145 B.R. 582, 586 (Bankr. N.D. Ill. 1992). Implied malice may be shown "by the acts and conduct of the debtor in the context of [the] surrounding circumstances." *Navistar Fin. Corp. v. Stelluti* (*In re Stellutti)*, 94 F.3d 84, 88 (2d Cir. 1996) (internal quotations omitted*); see also Lee v. Ikner* (*In re Ikner*), 883 F.2d 986, 991 (11th Cir. 1989) ("Constructive or implied malice can be found if the nature of the act itself implies a sufficient degree of malice.").

The Complaint alleges Defendant committed conversion when he retained property in violation of the Agreement. Plaintiffs allege Defendant kept the completed tree stands, money intended for the construction of the tree

stands, and money paid for training that allegedly never happened. Again, the Court must construe all factual allegations in the Complaint as true and must therefore assume for the sake of this motion that Defendant kept the tree stands and failed to perform services in violation of the Agreement.

The Complaint pleads sufficient facts to form the outline of a claim under section 523(a)(6). It is obvious from the Complaint that Plaintiffs have alleged Defendant willfully harmed their property and interests when Defendant did not perform under the contract. Indeed, Defendant admits in his reply brief that he is still in possession of the tree stands.

Defendant argues the Purchase Agreement renders Plaintiffs' 523(a)(6) claim impossible. He notes the Agreement obligated Stealth to pay shipping costs and argues the Court cannot infer a willful or malicious injury because ultimately Plaintiffs were responsible for transporting the materials. Defendant is correct that the Purchase Agreement places the burden on Plaintiffs for any shipping costs related to the new tree stands. Even so, the Court cannot conclude at this stage that there is no basis for a 523(a)(6) claim. From the record, the Court does not know what happened to the tree stands or the equipment or why possession has not been given to Plaintiffs. It is possible Defendant prevented Plaintiffs from acquiring the materials through willful and malicious conduct as contemplated in section 523. In any case, the Complaint lays out a facially plausible claim and the Court denies the motion to dismiss on this claim.

### 5. *Denial of Discharge Under 11 U.S.C. § 727*

Plaintiffs allege Defendant should be denied a discharge under section 727 for failing to explain the loss of assets. Plaintiffs do not cite any specific subsection of section 727, but the language in the Complaint evokes section 727(a)(5), which provides:

> (a)  The court shall grant the debtor a discharge, unless—
> . . .
>
> (5) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities.

Plaintiffs' Complaint does not identify the unaccounted-for assets or when the assets went missing. From the record it appears the assets are mainly 2013 sale proceeds and payments. The parties agree Plaintiffs do not have possession of the tree stands and Debtor apparently still has them. Those cannot be the assets at issue since Plaintiffs assert they own those and they would not be available to meet Defendant's liabilities. Neither can it be the dies the Plaintiffs now say were never owned by Defendant. The status of the remaining equipment is unclear but, again, it appears the parties agree Plaintiffs do not have it but it appears the Defendant may.

Under section 727(a)(5), there are two stages of proof. *Structured Asset Servs., L.L.C. v. Self (In re Self)*, 325 B.R. 224, 250 (Bankr. N.D. Ill. 2005). "First, the party objecting to discharge has the burden of proving that the debtor at one time owned substantial and identifiable assets that are no longer available for his creditors. Second, . . . the debtor is obligated to provide a satisfactory explanation for the loss." *Id.* (internal citation omitted).

The Complaint has failed to articulate a cognizable claim under section 727. The Complaint alleges the "Defendant had failed to explain the loss of assets or deficiency of assets to meet his obligations." ECF No. 1, p. 3. The Complaint does not specify which assets Defendant has allegedly lost. In their briefs, Plaintiffs add they believe Defendant cannot account for how he spent $30,000 in about 2013, and they attached a deposition to that effect.

The Court need not consider extrinsic evidence in a motion under Fed. R. Civ. P. 12(c) and will therefore not consider the deposition in its decision. If the Court did consider the deposition, then it would have to convert Defendant's motion to a motion for summary judgment. Fed. R. Civ. P. 12(d).

Solely on the face of the Complaint and the Plaintiffs' brief (without regard to the deposition testimony), Plaintiffs have failed to articulate a cognizable claim under section 727. Even if Plaintiffs intended to plead under section 727(a)(5), it is unclear what assets Defendant is supposed to have lost. The Complaint alleges Defendant failed in 2015 to explain the loss of assets in the state court matter, but section 727(a)(5) requires Debtor to explain the alleged loss sometime "before determination of denial of discharge under this paragraph." If he failed to explain a loss in state court, it would be immaterial for a 727 inquiry so long as he explained it sometime before denial of the discharge.

But the above analysis assumes Plaintiffs intended to plead under 727(a)(5). On the face of the Complaint, it remains unclear what precise subsection Plaintiffs intended to plead. As noted, the Complaint also fails to

11

specify which assets Debtor has supposedly lost or even when the loss occurred. For those reasons, the Court grants the motion to dismiss this claim.

### 6. *Request for Leave to Amend Complaint*

Plaintiffs did not file a motion for leave to amend their Complaint. Instead, they buried a request to do so in their brief. Under Fed. R. Civ. P. 15(a)(2), the "court should freely give leave [to amend] when justice so requires." Although leave should be granted liberally, a "court may deny leave for several reasons including: 'undue delay, bad faith[,] or dilatory motive[,] . . . undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment.'" *Dubicz v. Commonwealth Edison Co.*, 377 F.3d 787, 792 (7th Cir. 2004) (internal citations omitted). Mere delay is generally insufficient grounds for denying leave to amend, but "the degree of prejudice to the opposing party is a significant factor in determining whether the lateness of the request ought to bar filing." *Id.*

Defendant alleges leave to amend at this stage would result in prejudice. He notes Plaintiffs had three separate opportunities to amend but failed to do so. Defendant also alleges an amended complaint would lead to additional discovery expenses and a delay to Debtor's fresh start.

In particular, Defendant cites *Perrian v. O'Grady*, a Seventh Circuit case in which the Court opined "the longer the delay, the greater the presumption against granting leave to amend." 958 F.2d 192, 194 (1992). But *Perrian* addressed a different factual scenario. There, the party requesting leave to amend waited until just before trial to file his request. The Seventh Circuit

found the district court was entitled to refuse to allow an amendment because "substantive amendments shortly before trial serve to defeat the public's interest in speedy resolution of legal disputes." *Id.* at 195.

In this case, the risk of delay is in question. That said, Plaintiffs have known since 2015 when they filed the state court complaint that they believed assets were not accounted for and they have had substantial opportunity to plead with more specificity. The adversary proceeding was filed almost five months ago. Plaintiffs were aware at least three months ago that the Motion to Dismiss was going to be filed. All the same, Plaintiffs waited until February to insert a request for leave to amend in their brief in opposition to the Motion to Dismiss. There are deadlines for other dispositive motions set so that if such motions are filed, they can be decided before the October 25, 2018, trial date. The deadline for discovery is April 18, 2018, and summary judgment motions are due by May 18, 2018. The lack of specificity in the Complaint and the delay in amending in this instance are undue and not justified. For these reasons, the request for leave to amend in Plaintiffs' brief is denied.

## **CONCLUSION**

The Court grants the Defendant's 12(c) motion on the section 523(a)(4) and 727 claims and denies the balance of the motion. The Court also denies the request in Plaintiffs' brief for leave to amend their Complaint.

This decision shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and Rule 52 of the Federal Rules of Civil Procedure.

A separate order consistent with this decision will be entered.

Dated: March 30, 2018

BY THE COURT:

Hon. Catherine J. Furay
U.S. Bankruptcy Judge